I want to please the court. My name is Peter Farkas. I'm with Lawfirm of Farkas & Toyka and along with me is my partner Richard Toyka and Councilor Russ Page. This is an appeal of a grant of preliminary injunction by the District Court. The case was brought by Multiple Listing Service, MRIS, Metropolitan Regional Information Systems, against what we call MRIS in this case, against American Home Realty Networks, which we abbreviate AHRN. I represent the defendant's appellate. We believe that the District Court erred by issuing an injunction, first against copyrighted content of a database. And then after we appealed and before the responsive brief, the judge revised the injunction and eliminated the terminology copyrighted content and replaced it with copyrighted photographs. Copyrighted content included textual content of the real estate listing and he reissued the injunction limiting it to copyrighted photographs. We believe that the judge made two principal errors in his decision. First, he ignored Section 204 of the Copyright Act, which requires a written instrument of conveyance for an assignment to be valid. And second, he erred by ignoring Section 409 of the Copyright Act, which requires the Copyright Registration Application to list the underlying textual elements or photographic elements of a compilation database. And he also erred on that side by ignoring Section 103, which limits the coverage of the compilation copyright to the compilation and excludes the constituent elements. In this case, the text and the photography. Now, as to the assignments, there's no registration of the listing, the real estate listing textual elements. There's no registration of the photographs. There's only a registration of the compilation copyrights as a whole. And the compilations actually consist of things other than text and photographs. It includes third-party materials from local government tax records, school records, Microsoft Bing maps. And there's no, but the only copyright that exists here is for the overall compilation. Now, on Section 204, in order for there to be a valid assignment, there has to be a paper contract signed by the parties or their agents. And the case law also says that you've got to put the deal in. What are the fundamental terms of the deal? Now, and that's in the Ninth Circuit case. It affects associates. In that regard, even under 204, are you going to talk at all about why the E-Sign Act isn't applicable? Well, 204 predates the E-Sign Act, but the judge did not make any findings under 204. It just went right to the E-Sign Act. Now, it's instructive to follow how the E-Sign Act even came up. We're here on the issuance of a preliminary injunction. The preliminary injunction briefing was all done when the plaintiff produced, as an exhibit to one of the briefs, the terms of use, which is a pop-up. Well, they didn't actually produce the screenshot of the pop-up or of the terms of use. They produced a transcription of the pop-up. And they did that after the preliminary injunction briefing was completed. And we responded to it in the motion to dismiss. And the defendant did not actually raise the E-Sign Act issue until it moves for a motion for leave to file a surreply to the motion to dismiss. And why would that matter? Because we had no opportunity to thoroughly brief the issue. And the judge denied the motion for leave to amend, saying it was moved. Yet, nevertheless, adopted the E-Sign Act argument first made on the motion for leave to file a surreply. Now, the E-Sign Act, as I mentioned, is a pop-up that says, first, it says that you have to sign this, because if you sign this, I mean, you have to agree to this, because if you don't agree to it, you can't upload your photographs. So it's a condition of using the database. Second, it's not called an assignment agreement or a copyright assignment agreement. It's just called a terms of use. Third, the assignment is buried in the second paragraph of the terms of use and assigns worldwide copyrights, whatever that means. It doesn't specifically assign U.S. copyrights, and it doesn't identify any U.S. copyrights. There's no way for the user to avoid this pop-up. So, and the, well, I see my time is running out, running down and up. The pop-up does not require a signature. It doesn't require an approval. There's no opportunity to say, I agree to this. Instead, it says, by the act of uploading your photographs, you agree to assign worldwide copyrights to MRIS. We argue that 204A, that doesn't meet the standards of 204A, and the E-Sign Act is not a, is not a, doesn't trump the 204. It may, certainly it doesn't trump it in this case, because 204 hasn't been complied with. The judge made no findings under 204, and didn't actually make any real findings under the E-Sign Act either. He just said, well, the E-Sign Act works. The only case that the judge cited was a case, was Hermosillo versus Coca-Cola from the 11th Circuit, which actually didn't apply the E-Sign Act. It was, well, no, the only case the judge cited was the district court decision in the Coca-Cola case, where there was a C-site to the E-Sign Act, but no discussion about it. And then the 11th Circuit, in deciding the case, went off on completely different grounds, ignored E-Sign and decided the case on Florida common law, contract law. The closest thing there is to a 204A case with E-Sign is a case called MVP Entertainment, which we cited in our brief, in our supplemental opening brief, in which the state court in California, the state appellate court in California, applied 204A, notwithstanding extensive briefing on the E-Sign Act, and relegated and basically said 204A applies. Because the party didn't cite anything to, didn't meet one of the three prongs, three possible prongs, well, three prongs of 204A, and therefore relegated the E-Sign Act arguments to a footnote. Are you referring to Craigslist? No, no, no, I'm referring to MVP Entertainment. I think it's cited in page 27 of our supplemental reply brief. Thank you. Ms. Parks, I believe you are out of time in your initial presentation. Let's hear from the appellate, and then you have some time remaining. Thank you. May it please the court. My name is Margaret Escanay from Finnegan, Henderson, Faribault, Garrett & Dunner, and I represent Plaintiff FLE, Metropolitan Regional Information Systems, more commonly known as MRIS. With me today are Whitney Cook, an associate at my firm, as well as Jay Westermeyer, also at Finnegan, and the general counsel for MRIS. The district court did not abuse its discretion in granting preliminary injunction in favor of MRIS. The district court applied the right criteria and reached the correct conclusion. The district court considered each preliminary injunction element individually. First, the district court concluded that MRIS was likely to succeed on the merits of its claims. Second, it evaluated the irreparable harm to MRIS. Third, it considered the harm alleged by AHRN. And fourth, it considered the public interest. There was substantial record evidence to support the district court's conclusion. As an initial matter, the PI on appeal enjoins only the use of MRIS's copyrighted photographs. The discussion of other database content is premature and not on appeal at this time. The PI does not stop AHRN from offering its referral or rating services. It just prevents AHRN from using MRIS's protected photographs without authorization. And AHRN has not explained why it needs the photos to offer its ranking and matching services. Regarding the terms of use discussed by Mr. Farkas, I would like to turn the court's attention to Joint Appendix 464, which contains the text of the terms of use. That contract assigns all rights and photographs to MRIS, and it includes a warranty of ownership and the authority to assign. It includes, as Mr. Farkas put it, the parameters of the deal. There is also sufficient record evidence to support the district court's factual determination that the process of executing the terms of use was sufficient to constitute a signature under the E-Sign Act. That you can find in the Bellick Declaration in the Supplemental Joint Appendix of 14. MRIS does not argue that E-Sign trumps Section 204 of the Copyright Act. Rather, it satisfies Section 204 of the Copyright Act. The process available in the TOU and the process identified in the Bellick Declaration is a signature in the digital world. It's a modern signature and authentication process that's tied to all of the activity of the individual MRIS subscriber, and there's nothing in the record that indicates otherwise. Additionally, E-Sign covers all agreements. There's nothing in E-Sign or in the legislative history that indicates that it is not applied to copyright assignments. In fact, I would like to turn the court's attention to E-Sign Section 7003, which identifies the express exceptions to E-Sign. The legislative history and legislation itself shows that Congress considered what should not be subject to E-Sign and identified it in the statute. Copyright assignments are not among the things listed in those exceptions. Mr. Park has criticized the district court's reliance on McGarrett or Mosiah. However, that criticism is inappropriate because the only proposition for which that case was cited by the district court was that electronic communications may constitute a sign right in satisfying Section 204A. In fact, that's what that district court decision holds. That the appellate court did not need to rely on that holding is an apposite. And of course, there's no holding to the contrary. The district court, if you look at both the August 27th and November 13th opinions, the district court went into detail about why the E-Sign Act applies to Section 204A. There's no reason not to adopt and accept the findings of the district court on this issue. Mr. Park, although not discussing this issue in detail, indicated in his introduction that AHRN believes that MRAS's copyright registrations are invalid and unenforceable. However, the district court rejected this position in both of its opinions and laid out a detailed explanation of why and how MRAS met the requirements of Section 103 and Section 409. Section 103 of the Copyright Act discusses and covers the subject matter of copyrights, not registration. And the terminology in that section prevents a compilation holder from acquiring rights by virtue of the fact that they are included in the compilation. In other words, it's not sufficient to include something in a compilation in order to obtain copyright rights in those individual elements. It's a registration versus ownership issue. That was what I was getting ready to ask. Did you understand his argument to go to the validity of the copyright per se or the allegedly defective nature of the registration? I understood it to go to the defective nature of the registration, which I think is why Section 409 was brought into this issue. And does the compilation argument also apply to the photographs? I'm sorry. I understood the argument about individual works in the context of text. I was less clear as to its applicability with respect to the photographs. If I understand the court's question, and if I don't, please interrupt, maybe backing up a little bit here is important. Because MRAS in its complaint alleged the entirety of the compilation against AHRN and believes that it is infringing the entirety of the compilation, not only its individual elements. The district court, upon AHRN's motion for reconsideration, in its judgment, decided that as of right now, MRAS has proven that the photographs are infringed, has identified the likelihood of success on the merits, the harms, et cetera, associated with the photographs, and has limited the current preliminary injunction to the photographs that are part of the compilation. However, the compilation as a whole is still being litigated. Does that answer your question? I think so. Thank you. Additionally, MRAS asserts that its registrations are sufficient under Section 409. I would like to turn the court's attention on the 409 issue to the amicus brief filed by the Copyright Office in the Bean v. Hufton-Mifflin Appeal, which was available to the district court and is in the Joint Appendix of 368 to 404, which I believe does an excellent job of explaining the Section 409 issues. But basically, the Copyright Office interpretation and rulemaking, as it relates to Section 409 of the Copyright Act, should be given Chevron deference because both in the CFR and in the compendium, the Copyright Office specifically allowed for the registration of compilations to identify the author of the compilation and not necessarily the author of each individual work within the compilation. And that, and the compendium also states, as noted in our briefs, that where the owner of the compilation also owns some or all of the constituent elements, the registration for the compilation covers those constituent elements. And that is what MRAS is relying on today. This, of course, is in line with the Fourth Circuit precedent in Zoom v. Image Line. The relevant holding in Zoom in this case is that the registration for the compilation covers the copyrightable elements in the compilation. And this holding was not disturbed by Reed, as argued by HRN. One thing that Mr. Farkas did not bring up, but is in the briefs, is the discussion of the Munch, Alaska Stock, Bean, and Chaga cases, which all deal with this war online issue and we treat them together. I think it's important to note quickly that first there are substantial factual differences between those cases and the MRAS v. HRN case. It is also important to note that none of those cases are in this circuit, and none of them discuss or distinguish the Zoom v. Image Line case in any way. Not a single one of those opinions even mentions the Zoom v. Image Line opinion. Even where the compilation covers the components, would it not be preferable for the components to be listed? Your Honor, the MRAS database, as an example, is an automated database registered quarterly with over 70,000 listings per quarter. Each listing contains not only the various textual information that Mr. Farkas was referring to, but anywhere between one and 20 photographs. So the burden to identify each component of a compilation in an application would be extraordinary. Not only on the applicant would it be extraordinary to identify all those elements of the compilation, but I don't know how the Copyright Office itself would process materials that big. Although it appears that that information is at least anticipated since the compilation registration makes available space to list those compilations. Do you think it's just impractical given the magnitude? I respectfully disagree with Your Honor that there is a place for that. I don't know if you've ever seen a copyright application, but there's really very little information available to be provided. It's a small form with specific lines to fill out. So there isn't actually a practical way to provide that information to the Copyright Office. Additionally, I don't think it's necessary for the reasons that are articulated for the purposes of protecting the compilation copyright, especially where the owner of the compilation also owns the constituent elements, as is here. Thank you. If there are no additional questions about Section 409, I'd like to turn to MRIS's irreparable harm that the District Court found. In its briefs, HRN argues that MRIS did not assert sufficient irreparable harm. However, the District Court's assessment of harm was well within its discretion and evidence supported the decision that MRIS was suffering irreparable harm at the time of the preliminary injunction. Specifically, MRIS's loss of oversight over the copyrighted content was not speculative or future harm, and it harmed MRIS's credibility and integrity with its core subscribers. Moreover, HRN puts the blame on MRIS for any errors in its own website. So to the extent that, because MRIS is responsible for the oversight of the MRIS database, and if you look at Joint Appendix 95, which is a printout from the HRN website, and Joint Appendix 360, which is the terms of use of the HRN website, and the 360 was relied on by the Court, you'll see that HRN specifically states that the MLSs, of which MRIS is one, are responsible for all the content and the errors that might appear on a neighbor city website. Moreover, the photos bear the MRIS copyright notice, which gives the false implication that MRIS approves of or is related to or is affiliated, sponsored by, that HRN is affiliated or sponsored by MRIS. So the removal of the photographs mitigates the harm being caused by HRN's infringement. Additionally, the District Court noted that the diversion of customers from MRIS licensees harms the relationship with the subscribers and thus constitutes harm to MRIS. There's nothing in the record that was provided by HRN that disputes any of this reputational harm that was being suffered by MRIS. In contrast, HRN did not assert any cognizable harm. It's very important to note that the only harm asserted by HRN to the District Court was litigation costs, and you can see that at Joint Appendix 607. The District Court correctly rejected the cost of litigation as a cognizable harm in a connection with the preliminary injunction. The claims of harm that HRN is now providing, which are regarding the impact on its business, were never presented to the District Court during the preliminary injunction stage. So the District Court simply cannot abuse its discretion by not considering an argument or evidence that was not presented to it. And moreover, as I mentioned in my introduction, the preliminary injunction on appeal does not prevent HRN from offering its agent match and agent scoring services. It merely prevents HRN from infringing the photographs in the MRIS database. I have nothing further in my initial presentation. Do you have any questions? Any questions? Okay, I think we understand your position. Thank you very much, Your Honor. Yes. Mr. Farkas. First, my opponent cited the amicus brief in one of the District Court cases that we cite. An amicus brief by the trademark copyright office. The decision in Chaga that we cite in our brief basically said that the copyright office's position on the issue there deserves no deference because where Congress has spoken clearly on the matter, there is no further issue there. Second, the uploading of a picture is not a communication. So it doesn't imply anything other than that the party, that the agent uploading the pictures wanted to upload the picture under penalty of not being able to access the database. Third, the injuries that MRIS claimed were claimed by subscribers to MRIS, not by MRIS itself. MRIS is a monopolist. It's not affected one way or another by the alleged infringement. It doesn't lose any revenues. And all the injury alleged was to the subscribers. And finally, in response to Judge Duncan's question, the Copyright Office's Form 65, I believe, at A48, says where all or a substantial portion of the material in the database represents copyrightable expressionism, and it is being published or registered for the first time. The claim could also extend to text, revised text, additional text. It doesn't mention anything about photographs being included as protected material by virtue of its being included in the database. And indeed, there is no evidence, in fact the evidence is contrary, to that the substantial portion of the material in the database represents copyrightable expression. The Zoom case on which the court relied did not decide the issue in this case. In fact, it went out of its way with a footnote and a sentence after the footnote saying that the court does not decide the issue of whether the compilation gives permission or gives a right to enforce the registration against constituent elements. Apart from that, the case was abrogated by Reid Alsevier, but the case specifically declined to decide the issue here for which they cited. And the district court decision in Zoom, in a footnote, cites the fact that the plaintiff there had submitted a registration naming, it was a compilation registration, but it named in the registration 1580 photographs. And the Copyright Office itself told the applicant to delete the reference to the 1580 photographs because those would have to be separately registered and the fees separately paid. So that case does not support MRIS's position here. In addition, we do not contend that it is impossible to meet Section 204A with electronic communications. They just haven't done it. You could have conceivably an assignment with a real electronic signature between named parties, named signatories on emails, back and forth. That's not the case here. The case here is this pop-up that doesn't clearly identify itself as an assignment and is not accepted by either party. Thank you. Thank you, Mr. Farkas. We'll come down to Greek Council and then go into our last case.
judges: William B. Traxler Jr., Roger L. Gregory, Allyson K. Duncan